## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| JEFFREY HOWARD STAYTON, | : | MOTION TO VACATE |
| BOP No. 11914-002, | : | 28 U.S.C. § 2255 |
|     Movant | : | |
| | : | CIVIL ACTION NO. |
|     v. | : | 1:09-CV-157-WSD |
| | : | |
| UNITED STATES OF AMERICA, | : | CRIMINAL ACTION NO. |
|     Respondent. | : | 1:06-CR-66-1-WSD |

**************************          **************************

| | | |
|---|---|---|
| WILLIAM CURTIS CHILDREE, | : | MOTION TO VACATE |
| BOP No. 11913-002, | : | 28 U.S.C. § 2255 |
|     Movant, | : | |
| | : | CIVIL ACTION NO. |
|     v. | : | 1:09-CV-209-WSD |
| | : | |
| UNITED STATES OF AMERICA, | : | CRIMINAL ACTION NO. |
|     Respondent. | : | 1:06-CR-66-2-WSD |

## <u>ORDER</u>

Jeffrey Stayton and William "Curt" Childree were convicted in December

2007 of honest-services fraud, in violation of 18 U.S.C. § 1343 & 1346 [*Criminal*

135].[1]  Stayton was also convicted of obstruction of justice (for lying to a grand

---

[1] References to [*Criminal x* at *y*] are to the combined criminal docket for
both Stayton and Childree.  References to [*Tr. Trans.* at *x*] are to the criminal trial
transcript, which may be found in Documents 152-158 in the criminal docket.
References to [*Stayton x* at *y*] and [*Childree x* at *y*] are to the separate civil dockets
opened for their respective § 2255 motions.

jury), in violation of 18 U.S.C. § 1503 [*id.*].  Both men were acquitted on bribery

charges under 18 U.S.C. § 201 [*id.*].  Neither Stayton nor Childree filed a direct

appeal.  Both men instead filed motions, that they later amended, to vacate, set

aside or correct their sentences under 28 U.S.C. § 2255.

    After Stayton and Childree's amended § 2255 motions were filed, the United

States Supreme Court decided *Skilling v. United States*, 130 S. Ct. 2896 (2010).

*Skilling* resolved a "void for vagueness" challenge to 18 U.S.C. § 1346 by

"par[ing] that body of precedent down to its core" and holding that convictions for

honest-services fraud may be returned only for "fraudulent schemes to deprive

another of honest services through bribes or kickbacks supplied by a third party

who had not been deceived." *Skilling*, 130 S. Ct. at 2928.  This Court ordered

Stayton, Childree, and the Government to brief the application of *Skilling* to this

case.

    This matter is now before the Court on Stayton and Childree's § 2255

motions, as amended and briefed, the Government's responses, and the

supplemental briefing ordered by the Court [*Stayton* 1, 15, 24, 26, 27, 35, 36 & 37;

*Childree* 1, 2, 12, 14, 22, 29, 46, 47, 48 & 49].  After a thorough review of the

record, the Court vacates the honest-services fraud convictions of Stayton and

Childree.  Stayton's conviction for obstruction of justice is not vacated and his motion for § 2255 relief on this Count of conviction is denied.

## I.   BACKGROUND

Jeffrey Stayton was "the Aviation Officer for the Army Test and Evaluation Command in Alexandria, Virginia" [*Stayton* 1 at 14].  Among his "primary functions was coordinating the acquisition of foreign aircraft for use by the Department of Defense" [*id.*].  William Childree was "the principal of Maverick Aviation," an Alabama business [*Childree* 12 at 1].  Stayton and Childree were close friends.  So close, that Stayton intended one day to take over Maverick Aviation [*Tr. Trans.* at 429].

In the wake of September 11, 2001, the United States Government sought a military contractor to purchase, modify, and deliver "two Russian Mi-17 helicopters . . . on an extremely expedited schedule" [*Stayton* 15 at 1].  The contract – which was classified – had a final value of approximately $5 million [*Tr. Trans.* at 318-22].  Based in significant part on Stayton's input, Maverick was selected as the contractor [*Tr. Trans.* at 260-65].

Soon after Stayton, Childree, and others returned from Siberia in December 2001, $1 million in helicopter contract funds were released from escrow based on

Stayton's (premature) certification that certain contract requirements had been completed [*Tr. Trans*. at 322-27].  Less than two weeks later, Childree directed the Government's escrow agent to use a portion of those contract funds to pay off Childree's home mortgage.  Childree also directed the Government's escrow agent to wire $61,071.75 in contract funds from Alabama to California to pay off the second mortgage on Stayton's Virginia home.  Childree told the escrow agent that "he wanted us to wire this money to payoff the loan for Mr. Stayton in payment for some work that Mr. Stayton had done for him on some parts that had been purchased for the helicopters" as "payment for the part he played" [*Tr. Trans*. at 74].

As a senior government official involved in procurement and government contracts, Stayton was required to attend annual ethics training [*Tr. Trans*. at 704-06].  Stayton was further required to file annual financial disclosure statements [*id.*].  Despite these disclosure requirements, Stayton did not disclose the 2002 payoff of his second mortgage by Childree in his annual disclosure statements (or otherwise) until at least 2006.

The Maverick contract first came under close scrutiny in 2002.  Over the next few years, both Stayton and Childree received document requests and

4

subpoenas aimed at uncovering financial transactions between them.  Neither Stayton nor Childree revealed the 2002 loan payoff in response to those requests and subpoenas [*Tr. Trans*. at 516-20 & 528-31].  As late as 2005, Stayton affirmatively stated in a cover note in a response to a subpoena: "I have no business dealings or financial interests that would or have made payments of [sic] or toward my home or other debts" [*Tr. Trans*. at 531].

When confronted in 2006 with documentary evidence that Childree had wired contract funds to pay off Stayton's second mortgage, Stayton told investigators and grand jurors that it was a "loan."  Stayton acknowledged, however, that there was "no documentation on the loan" and "no terms that were agreed," including, for instance, an interest rate, a maturity date, an amortization schedule, or security [*Tr. Trans*. at 520-22 & 926 & 943-49].  There was no evidence that Stayton, between 2002 and 2007, ever made any payments of principal or interest on the "loan."  In contrast, when Childree loaned his own daughter money, he required payments, if not always monthly, at least "close to clockwork" [*Tr. Trans*. at 1054-55].

Stayton never listed the "loan" as a liability and Childree never listed the "loan" as an asset on their own later loan applications or personal financial

statements, even when those documents called for the information [*Tr. Trans.* at 644-51]. Stayton's only explanation for why the "loan" was never documented was that – eleven months after his second mortgage was paid off by Childree and after the investigation into the Maverick contract was initiated – his supervisor issued a "no contact" order forbidding Stayton from communicating with Childree. In rebuttal, the Government introduced evidence indicating that Stayton repeatedly violated that "no contact" order [*Tr. Trans.* at 928]. The Government also introduced evidence that, in 2002, Childree sold Stayton a 1974 Corvette for $5,000, despite having paid $15,000 for the car just a year earlier [*Tr. Trans.* at 1071].

Stayton and Childree were both summoned to appear before a grand jury. Childree declined to appear. Stayton, however, elected to testify. Stayton's grand jury testimony, which was played at trial, was evasive, equivocal, and self-contradictory [*Tr. Trans.* at 542-639]. In March 2006, Childree and Stayton were indicted in the Middle District of Alabama for honest-services fraud and bribery, and Stayton was also indicted for obstruction of justice (with respect to his grand jury testimony) [*Criminal* 1].

After several months of pre-trial proceedings, the Honorable Mark Fuller recused himself and requested that the case be assigned to a judge from outside the Middle District of Alabama [*Criminal* 68].  Pursuant to 28 U.S.C. § 292(b), the United States Court of Appeals for the Eleventh Circuit designated this Court (Duffey, J.) to preside over the litigation [*Criminal* 69].  Because a classified contract was involved, motions practice and hearings were held pursuant to the Classified Information Procedures Act ("CIPA"), 18 U.S.C. App. 3.  Through trial counsel, the parties, as allowed by CIPA,  negotiated stipulations to be admitted at trial.[2]

In July 2007, trial counsel for Childree produced a copy of a note dated January 9, 2002, in which Stayton "thanked" Childree for the $61,071.75 "loan."  In part because the note was first produced 5-1/2 years after it had allegedly been written – despite earlier document requests and subpoenas directed to Stayton and Childree – the Government submitted the note to the United States Secret Service for analysis.  The Secret Service's August 2007 report "determined that the black

---

[2]  The parties devote a significant part of their § 2255 filings to arguments about the CIPA proceedings and the stipulations.  *Skilling* controls the outcome of Stayton's and Childree's challenge to their honest-services fraud convictions, and the alleged errors in the CIPA proceedings are unrelated to Stayton's conviction for obstruction of justice.

ink used . . . matched a standard that was commercially available prior to 2002 and is still widely available" [*Stayton* 24-2 at 3].  In other words, the note *might* have been written in 2002, as Stayton and Childree contended, or it *might* have been written in 2007, as the Government believed.  The Secret Service report opined: "Therefore, no conclusion could be rendered regarding the authenticity of Exhibit Q1 with respect to the first production date of the writing ink" [*id*.].

The Secret Service also conducted a watermark analysis and an indented writing analysis of the note.  The watermark analysis was inconsequential because there was no discernable watermark in the note paper.  The indented writing analysis showed only that at some point the word "Curt" was written and double underscored on a piece of paper placed on top of the note.  Neither of these additional two forms of analysis indicate whether the note was written in 2002 or 2007.  The Government did not share the Secret Service's report with Stayton or Childree before trial.

The trial commenced in December 2007.  In light of then applicable Eleventh Circuit precedent – and consistent with precedent from circuits across the country – this Court instructed the jury that it could find Stayton and Childree guilty of honest-services fraud for "accepting a bribe, taking a kickback, or

8

receiving a personal benefit from an undisclosed conflict of interest" [*Tr. Trans.* at

1226].[3]  The Eleventh Circuit's honest-services pattern jury instruction was used to

charge the jury.

Both men were convicted of honest-services fraud, and Stayton was also

convicted of obstruction of justice.  As also noted above, both men were acquitted

of bribery.  Neither Stayton nor Childree filed a direct appeal.[4]  Both men filed

§ 2255 motions, which they later amended, in the Middle District of Alabama, and

are represented by new counsel.  Stayton opposed the referral of his § 2255 motion

_____

[3] The court instructed the jury:

> If instead the official or employee acts or makes a decision based
> on the official's own personal interest, such as accepting a bribe,
> taking a kickback or receiving a personal benefit from an
> undisclosed *conflict of interest*, the official has defrauded the
> government of the official's honest services even though the
> department, agency or other public entity may not have suffered
> any monetary loss in the transaction. Further, the government does
> not have to prove that a public official would have made different
> official decisions if he had avoided or disclosed *the conflict of
> interest*.

[*Tr. Trans.* at 1226-27 (emphasis added)].

[4] Although both Stayton and Childree initially charged their trial counsel
with providing ineffective assistance for not taking direct appeals, Stayton and
Childree have since abandoned those claims.

to this Court (Duffey, J.) [*Stayton* 9], delaying the transfer for roughly one year.

Ultimately, however, both Stayton and Childree's § 2255 motions were referred

[*Stayton* 30; *Childree* 39].  Stayton and Childree later asked that their § 2255

motions be considered together.

## II.   DISCUSSION

Federal law provides that:

> A prisoner in custody under a sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).  Federal law further provides:

> If the court finds that . . . there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate.

*Id*. at (b).

A one-year period of limitation applies to § 2255 motions.  That period runs

from the latest of four specified events, one of which is "the date on which the

right asserted was initially recognized by the Supreme Court, if that right has been

10

newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." *Id*. at (f)(3). The Government has conceded that the decision in *Skilling* is retroactively applicable on collateral review. *See Bousley v. United States*, 523 U.S. 614, 620 (1998); *see also Schriro v. Summerlin*, 542 U.S. 348, 351-55 (2004). Stayton and Childree's challenge under *Skilling* of their honest-services fraud convictions is timely, as is Stayton's challenge of his obstruction of justice conviction.

    A.    *Procedural default*

The Government contends, however, that Stayton and Childree procedurally defaulted their opportunity to challenge their honest-services fraud convictions under *Skilling* because they did not have the foresight to raise this challenge before or at trial. The Government concedes, as it must, that procedural default does not apply "if the petitioner establishes cause for the waiver and shows actual prejudice resulting from the alleged violation." *Reed v. Farley*, 512 U.S. 339, 354 (1994). The Government does not argue that Stayton and Childree have not suffered "prejudice," only that they have not shown "cause."

The United States Supreme Court has "not given the term 'cause' precise content." *Reed v. Ross*, 468 U.S. 1, 13 (1984). However, the Supreme Court has

11

clearly recognized that "when the state of the law at the time . . . did not offer a

'reasonable basis' upon which to challenge the jury instructions," that constitutes

"cause for failing to raise the issue at that time."  *Id*. at 16-17.  That condition is

met, for instance, where the United States Supreme Court later issues a decision

with retroactive effect "'[overturning] a longstanding and widespread practice to

which [the Supreme Court] has not spoken, but which a near-unanimous body of

lower court authority has expressly approved.'"  *Id.* at 17 (quoting *United States v.

Johnson*, 457 U.S. 537, 551 (1982)).

 *Skilling* represents just the sort of "clear break with the past" that the United

States Supreme Court contemplated as giving rise to "cause."   *Id*. (quoting

*Johnson*, 457 U.S. at 549).  Although this Court has not undertaken an independent

review of every honest-services fraud decision since the enactment of § 1346 in

1988, it notes that in 2009 the Solicitor General represented to the Supreme Court

that "courts have defined the two major categories (bribes/kickbacks and

undisclosed self-dealing/conflicts-of-interest) that fall within the [honest-services

fraud] paradigm" and that "courts have universally characterized as 'core

misconduct' covered by the statute cases . . . based on a public official's

undisclosed conflict of interest."   Brief for United States at 24 & 35 *Black v.*

*United States*, 130 S. Ct. 2963 (2010) (No. 08-876), 2009 U.S. S. Ct. Briefs LEXIS 1009 at *26-27 & 43-44; *see also* Brief for United States at 55 *Skilling v. United States*, 130 S. Ct. 2896 (2010) (No. 08-1394), 2010 U.S. S. Ct. Briefs LEXIS 33 at *76 ("both forms of undisclosed self-dealing are core honest services frauds"). Neither Skilling's lawyers nor the *Skilling* Court identified any court of appeals case decided in the twenty-plus years after § 1346 was enacted in which conflicts of interest were found to be outside the scope of the honest-services fraud statute. The *Skilling* Court acknowledged that "[u]niformly, [the courts of appeal] . . . have declined to throw out the statute as irremediably vague." *Skilling*, 130 S. Ct. at 2928.[5]

Instead, by terming "conflict of interest" prosecutions as "relative[ly] infrequent" and "amorphous," the *Skilling* Court elected to define them out of the

---

[5] In the Eleventh Circuit, cases rejecting constitutional challenges to § 1346 included: *United States v. Hasner*, 340 F.3d 1261, 1268-69 (11th Cir. 2003) (rejecting void for vagueness challenge), *cert. denied*, 543 U.S. 810 (2004); *United States v. Paradies*, 98 F.3d 1266, 1282-83 (11th Cir. 1996) (same), *cert. denied*, 522 U.S. 1014 (1997); *United States v. Castro*, 89 F.3d 1443, 1455-56 (11th Cir. 1996) (same), *cert. denied*, 519 U.S. 1118 (1997); *United States v. Waymer*, 55 F.3d 564, 568-69 (11th Cir. 1995) (same), *cert. denied*, 517 U.S. 1119 (1996).

"core" of honest-services fraud.  *Skilling*, 130 S. Ct. at 2932.[6]  But as Justice Scalia

observed, in recognition of the fact that, before *Skilling*, no circuit had limited

§ 1346's scope to just bribes and kickbacks:  "Until today, no one has thought (and

there is no basis for thinking) that the honest-services statute prohibited only

bribery and kickbacks," *Skilling*, 130 S. Ct. at 2940 (Scalia, J., concurring in part).

Thus, when the United States Supreme Court "pare[d] down" the scope of § 1346

to cover only bribes or kickbacks, it overturned a "longstanding and widespread

practice" by holding that prosecutions premised on conflicts of interest must be

"exclude[d]" from the ambit of § 1346.  *Skilling*, 130 S. Ct. at 2932.  That was a

watershed change.

   This Court acknowledges that the Eleventh Circuit has generally declined to

find "novelty" where "a number of others before had raised the claim before the

---

   [6]  In the Eleventh Circuit, "conflict of interest" prosecutions under § 1346
were sufficiently common that language addressing them was included in the
pattern jury instructions for criminal cases.  *See, e.g.,* Eleventh Circuit Pattern Jury
Instructions – Criminal Cases 310-314 (2003) (instructing that a conviction should
be returned for honest-services fraud if a defendant "benefit[ed] from an
undisclosed conflict of interest"); Eleventh Circuit Pattern Jury Instructions –
Criminal Cases 318-22 (2010) (same, but noting the grant of certiorari in *Skilling*).
*See also, e.g.*, Third Circuit Pattern Jury Instructions – Criminal Cases 476-78
(2009) (instructing that a conviction should be returned for honest-services fraud if
a defendant did "not disclose material information regarding a conflict of
interest").

petitioner failed to do so."  *Howard v. United States*, 374 F.3d 1068, 1072-73 (11th Cir. 2004) (citing cases).  But *Alabama v. Shelton*, 535 U.S. 654 (2002), the retroactive Supreme Court decision before the Eleventh Circuit in *Howard*, was one that resolved a circuit split.  *See id.* at 1073 ("That is why the *Shelton* Court was able to observe that 'courts have divided on the Sixth Amendment question presented in this case.'").  Thus, in *Howard*, the Eleventh Circuit did not have before it a decision that marked a "clear break" with a "long-standing and widespread practice . . . which a near-unanimous body of lower court authority has expressly approved."  *Reed v. Ross*, 468 U.S. at 16-17.  Rather, it had a case in which defendants in other parts of the country had successfully raised a constitutional claim that was still "live."  Because it was reasonable to have expected Howard to have done the same, his *Shelton*-based-claim fell outside the scope of *Reed v. Ross* and did not excuse his procedural default.[7]

---

[7]  The Supreme Court's admonition that "futility cannot constitute cause if it means simply that a claim was unacceptable to [a] particular court at [a] particular time," first included in a footnote in *Engle v. Isaac*, 456 U.S. 107, 130 n.35 (1982), and later repeated in *Bousley v. United States*, 523 U.S. 614, 623 (1998), is not inconsistent with *Reed v. Ross*, 468 U.S. 1 (1984).  Indeed, had the *Bousley* Court intended to overrule *Reed v. Ross*, it would have said so.  The *Bousley*-standard – requiring a defendant to raise a constitutional claim if that claim is finding traction in other courts even if not the "particular court" in which the defendant is being tried – can be reconciled with the *Reed v. Ross*-standard – acknowledging that

The issue presented here is not chalked on a clear slate.  Twenty-four years ago, the United States Supreme Court decided *McNally v. United States*, 483 U.S. 350 (1987).  That case "rejected the theory that the mail-fraud statute protects the intangible right of the citizenry to good government."  *Dalton v. United States*, 862 F.2d 1307, 1308 (8th Cir. 1988).[8]  For defendants who had been convicted on the theory that *McNally* rejected, the same procedural default issue that this Court now faces in the wake of *Skilling* arose.  Observing that "[a]t the time of her conviction, every federal court of appeals to consider the issue, including our Court, had approved the 'intangible rights' theory of mail-fraud prosecutions," the Honorable

where "longstanding and widespread practice" in a "near-unanimous body of lower court authority" has indicated that a constitutional claim is meritless, a defendant need not continue to make it.  What matters is whether rejection of a constitutional claim has been nearly universal.  As the Supreme Court itself suggested, once it is plain that a "near-unanimous body of lower court authority" has rejected a constitutional claim, "we might actually disrupt . . . proceedings by encouraging defense counsel to include any and all remotely plausible constitutional claims that could, some day, gain recognition."  *Reed v. Ross*, 468 U.S. 1 at 16.  After a certain point, it is not merely futile to raise an issue that a near-unanimous body of lower court authority treats as meritless, it is detrimental.  The defendant, defense counsel, and courts are all better served by focusing their limited resources and time on issues to which courts remain open and receptive.

[8]  Section 1346 was enacted promptly thereafter to reverse *McNally* legislatively.  *Skilling*, 130 S. Ct. at 2926 (Congress "responded swiftly").

16

Richard Arnold concluded that "[t]he *McNally* decision represented precisely the kind of 'clear break with the past, . . . overturn[ing] a long-standing and widespread practice . . . which a near-unanimous body of lower court authority has expressly approved' which will excuse a prior failure to raise a claim."  *Id.* at 1310 (citing *Reed v. Ross*, 468 U.S. at 17).  What was true in the wake of *McNally*, is equally true in the wake of *Skilling*.  There has been a "clear break" that supplies the requisite "cause."

Moreover, application of the *Reed v. Ross*-standard to find "cause" to permit Stayton and Childree to bring a *Skilling*-challenge to their honest-services fraud convictions – rather than rejecting that challenge as procedurally defaulted because "a number of others before had raised the claim before the petitioner failed to do so," *Howard*, 374 F.3d at 1072-73 – is consistent with the Supreme Court's direction to lower courts just last year not to "erroneously rel[y] on an overly rigid *per se* approach" in "cause and prejudice" determinations in habeas cases.  *Holland v. Florida*, 130 S. Ct. 2549, 2565 (2010).  Applied too rigidly, the *Howard*-standard would prevent any defendant from relying on a Supreme Court decision to establish "cause."  It is the nature of how the modern Supreme Court works that it waits for lower courts – usually many – to first "test and refine" constitutional

17

questions before granting certiorari.  *See, e.g., Adams v. Robertson*, 520 U.S. 83,

91 (1997) (dismissing writ of certiorari as improvidently granted where

constitutional question had not been fully litigated).  It will, therefore, almost

always be true that "a number of others" will have "raised the claim" before the

Supreme Court takes a representative case and issues a decision.  That is why the

significant issue – the nuance that reconciles *Bousley* with *Reed v. Ross* – is

whether the constitutional claim has already met with nearly universal rejection in

lower courts before the Supreme Court rules.  *See supra* n.7.  That is what

determines whether there has been a "clear break" with the past.

Because *Skilling* marks such a "clear break," Stayton and Childree have

shown "cause" for not having raised their constitutional challenge to § 1346

sooner.  The Government has conceded "prejudice."  This Court finds that Stayton

and Childree may pursue their claims under *Skilling*.

   B.   *Application of* <u>*Skilling*</u>

A principal question in this case is whether Stayton and Childree's

convictions for honest-services fraud must be vacated in the wake of *Skilling*.

Although there is no question that the honest-services fraud instruction given to the

jury in 2007 "was a good instruction before the Supreme Court ruled that honest-

services fraud requires proof of a bribe or kickback," *United States v. Black*, 625 F.3d 386, 391-92 (7th Cir. 2010), in hindsight that instruction was flawed.  In light of *Skilling*, the jury should not have been instructed that it could convict Stayton and Childree of honest-services fraud based solely on "conflicts of interest."  *See supra* at n.3.  Following the *Skilling* court's holding in 2010 that § 1346 must be construed "to encompass only bribery and kickback schemes," *Skilling*, 130 S. Ct. at 2933, it is clear that the instruction given to the jury in 2007 in this case was overbroad.

The jury returned a general verdict [*Criminal* 135] on the form proposed by the Government [*Criminal* 121].  That general verdict form did not ask the jury to specify the basis on which it found Stayton and Childree guilty of honest-services fraud.  Because the jury returned a general verdict, it is not possible to say with certainty whether Stayton and Childree were found guilty of honest-services fraud on the basis of "accepting a bribe," "taking a kickback," "receiving a personal benefit from an undisclosed conflict of interest," or some combination.  While the jury might have concluded that the $61,071.75 payoff of Stayton's second mortgage by Childree amounted to a kickback, it might also have convicted

19

Childree and Stayton for receiving a personal benefit from an undisclosed conflict of interest.[9]

In a line of cases originating with *Stromberg v. California*, 283 U.S. 359 (1931), and running through *Griffin v. United States*, 502 U.S. 46 (1991), the Supreme Court has discussed the circumstances in which a general verdict must be set aside.  Among other things, vacatur is "*constitutionally* compelled," *Clark v. Crosby*, 335 F.3d 1303, 1309 (11th Cir. 2003), "where  a provision of the Constitution forbids conviction on a particular ground [and] the general verdict *may* . . . have rested on that ground," *Griffin*, 502 U.S. at 53 (emphasis added). Given the overbreadth of the jury instruction and the resulting uncertainty about the basis for the verdict, the honest-services fraud convictions of Childree and Stayton under § 1346 must be set aside.[10]

---

[9]  In light of the acquittals on the stand-alone bribery counts, it seems unlikely that Childree and Stayton's honest-services fraud convictions rest on a finding that the $61,071.75 mortgage payoff was a bribe.

[10]  This is not a finding that either man is "actually innocent" of honest-services fraud.  Rather, in this case, the "guilty" verdict that was appropriately returned by the jury in 2007 now has to be set aside because the Supreme Court construed § 1346 in a new and significantly narrower fashion in 2010.  The Government may elect to retry one or both men.  In making that election, the Government may wish to consider the final paragraph of the opinion in *United*

C.    *Stayton's obstruction of justice conviction*

A further question in this case is what becomes of Stayton's obstruction of justice conviction.  Only two of the grounds that Stayton raises in his amended § 2255 motion have any bearing on that issue.  [*See Stayton* 15 ("Ground One C" and "Ground Three")].  Both are based on the argument that the Government violated his rights under *Brady v. Maryland*, 373 U.S. 83 (1963), when it failed to share before trial the results of the Secret Service's August 2007 analysis of the "thank you" note.  *See supra* at 7-8.  Stayton's first claim is that there was a stand-alone *Brady* violation, and Stayton's second claim is that his trial counsel was ineffective for not asserting that there had been a *Brady* violation.  That pair of claims fails for several reasons.

When the Government withholds evidence, there is a *Brady* violation only if that evidence is (1) favorable to the accused (because it is exculpatory or impeaching) and (2) material (so that its non-disclosure caused the defendant prejudice).  *See, e.g., Cone v. Bell*, 129 S. Ct. 1769, 1782-83 (2009); *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999); *Allen v. Sec'y, Fla. Dep't of Corr.*, 611 F.3d

_____

*States v. Black*, 625 F.3d 386, 394 (7th Cir. 2010).

740, 745-46 (11th Cir. 2010).  In this case, the Secret Service report is neither

"favorable" to Stayton, nor "material" to his conviction for obstruction of justice.

The "thank you" note from Stayton that Childree belatedly produced in July

2007 bore a January 2002 date.  Stayton argued that, in fact, the note had been

written in 2002.  The Government believed it might actually have been written in

2007.  The Secret Service's August 2007 report did *not* resolve that disagreement.

The Secret Service simply "determined that the black ink used . . . matched a

standard that was commercially available prior to 2002 and is still widely

available" [*Stayton* 24-2 at 3].  In other words, the note *might* have been written in

2002, as Stayton contended, or it *might* have been written in 2007, as the

Government believed.  The Secret Service report opined, quite accurately:

"Therefore, no conclusion could be rendered regarding the authenticity of Exhibit

Q1 with respect to the first production date of the writing ink" [*id*.].

The Secret Service's watermark and indented writing analysis added little, if

any, more.  Watermark analysis revealed nothing because there was no discernable

watermark on the "thank you" note.  Indented writing analysis showed only that at

some point the word "Curt" – Childree's nickname – was written and double

underscored on a piece of paper placed on top of the note.  Neither of these

additional two forms of analysis indicate whether the note was written in 2002 or written in 2007.   In short, the Secret Service report is neutral; it favors neither the Government nor Stayton.

Even assuming for the sake of discussion that the report was "favorable" to Stayton, it would only be material if there was a "reasonable probability that the withheld evidence would have altered at least one juror's assessment [of the case]." *Cone*, 129 S. Ct. at 1783.  That probability is judged not by viewing the withheld evidence in isolation, but rather in light of all other evidence.  *See Kyles v. Whitley*, 514 U.S. 419, 436 (1999); *see also Maharaj v. Sec'y for Dep't of Corr.*, 432 F.3d 1292, 1309-10 (11th Cir. 2005).  Stayton's own grand jury and trial testimony, as this Court previously observed at sentencing, was "not credible and . . . not believable" [*Criminal* 159 at 33].  "[T]he jury was free to reject the testimony . . . as a fabrication and use it as substantive evidence of his guilt."  *United States v. Artis*, 261 F. App'x 176, 180 (11th Cir. 2008).  "This rule applies with special force where the elements to be proved for a conviction include highly subjective elements: for example, the defendant's intent or knowledge . . . ."  *United States v. Brown*, 53 F.3d 312, 315 (11th Cir. 1995).  In any event, Stayton's testimony was not the only evidence against him.  In combination with the other testimony and

exhibits, *see supra* 3-6, the obstruction of justice case against Stayton was overwhelming.  The Secret Service report could not "'reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.'" *Strickler*, 527 U.S. at 290 (quoting *Kyles*, 514 U.S. at 435).  The Secret Service report was not "material" within the meaning of *Brady*, even if it was *Brady* material.

The Government's decision not to disclose the Secret Service report was not a *Brady* violation, and "it is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance."  *Bolender v. Singletary*, 16 F.3d 1547, 1573 (11th Cir. 1994); *see also Lockhart v. Fretwell*, 506 U.S. 364, 374 (1993) (O'Connor, J., concurring) ("today we hold that the court making the [ineffective assistance of counsel] determination may not consider the effect of an objection it knows to be wholly meritless under current governing law").  Because there was no stand-alone *Brady* violation, Stayton's trial counsel was not ineffective for failing to argue that there was.

Both "Ground One C" and "Ground Three" in Stayton's amended § 2255 motion, which raised the *Brady* issue as ineffective assistance of counsel and stand-alone claims respectively [*Stayton* 15 at 15 & 20-23], are without merit.

Stayton's obstruction of justice conviction will not be disturbed.  In light of the

Court's decision to vacate Stayton's honest-services fraud conviction, this Court

finds that it is appropriate to resentence Stayton on the obstruction of justice

conviction.  *See* 28 U.S.C. § 2255(b).

D.      *Certificate of Appealability*

This Court "must issue or deny a certificate of appealability when it enters a

final order adverse to the [movant]."  Rule 11(a), Rules Governing Section 2255

Proceedings for the United States District Courts.  A § 2255 movant "cannot take

an appeal unless a circuit justice or a circuit or district judge issues a certificate of

appealability under 28 U.S.C. § 2253(c)."  Fed. R. App. P. 22(b)(1).  "A certificate

of appealability may issue . . . only if the [movant] has made a substantial showing

of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To make a

substantial showing of the denial of a constitutional right, a § 2255 movant must

demonstrate "that reasonable jurists could debate whether (or, for that matter, agree

that) the petition should have been resolved in a different manner or that the issues

presented were adequate to deserve encouragement to proceed further."  *Miller-El*

*v. Cockrell*, 537 U.S. 322, 336 (2003) (citations and quotation marks omitted).

With respect to their honest-services fraud convictions, both Stayton and Childree have been granted relief under § 2255, and certificates of appealability are not required to be issued.  With respect to his obstruction of justice conviction, Stayton has not demonstrated that he has been denied a constitutional right or that the issue is reasonably debatable or deserves encouragement to proceed further. Issuance of a certificate of appealability is not warranted in this case.

### III.   CONCLUSION

For the reasons stated above,

**IT IS HEREBY ORDERED** that Childree's Motion to Vacate, Set Aside or Correct Sentence [*Childree* 14] is **GRANTED** and his honest-services fraud conviction is vacated;

**IT IS FURTHER ORDERED** that Stayton's Amended Motion under § 2255 [*Stayton* 12] is **GRANTED IN PART AND DENIED IN PART**.  Stayton's motion with respect to his honest-services fraud conviction under 18 U.S.C. §§ 1343 and 1346 is **GRANTED** and his honest-services fraud conviction is **VACATED**. Stayton's motion with respect to his conviction for obstruction of justice under 18 U.S.C. § 1503 is **DENIED**, however, Stayton will be **RESENTENCED** on his obstruction of justice conviction; and

**IT IS FURTHER ORDERED** that Certificates of Appealability will not be issued.

**IT IS SO ORDERED**, this 28th day of February, 2011.

WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE